# MEMORANDUM OF LAW

## Judicial Notice of Adjudicative Facts Rule 201 (C)(2),(d)

## CLAIM #1

Petitioner was denied his Constitutional right to Effective Assistance of Counsel After his trial Counsel elicited testimony from a State witness that infringed upon his Right to Confrontation by Law

Petitioner, Mr. Harrison's Constitutional Right to effective assistance of counsel was denied when his trial counsel Donald Donnelly elicited testimony from a state witness which infringed upon his Constitutional Right to Confrontation after the state witness made references concerning the testimony of an unavailable witness in violation of the Six Amendment to the United States Constitution, and Article 1 § 13 of the Louisiana Constitution of 1974.

The United States Supreme Court in Strickland v. Washington, 416 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), established a two prong test to determine ineffective assistance of counsel. First, there must be a specific showing that counsel made errors so serious that counsel was not functioning as the counsel guaranteed the defendant by the Sixth Amendment. Secondly, counsel error must be so serious that the defendant was deprived of his right to a fair trial whose result is reliable. It must be shown that but for counsel's unprofessional errors, the result of the proceedings would have been different. Strickland, Supra.

In order to meet the First prong of Strickland, Mr. Harrison maintains that during trial on March 10, 2008, counsel Donnelly was cross-examining state witness Sergeant Arthur Kaufman

concerning his investigation of the crime and the apprehension of Mr. Harrison. While questioning Sgt. Kaufman about the on-the-scene identification process, Sgt. Kaufman said in particular: "an individual name Eddie Guillory saw the suspect and pointed him out as the person who was struggling with Officer Gonzales, prior to Officer Gonzales being shot. [See Trial Tr. pg. 43 (369), lines 11-32] and [Trial Tr. pg. 44 (370), lines 1-9].

Trial counsel Donnelly should have refrained from inquiring about what the only eyewitness to the crime Eddie Guillory disclosed during the on-site identification, when in fact, Mr. Guillory had not been called to testify. The disclosure or the revealing of testimony of an unavailable witness violates a defendant's Fifth, Sixth and Fourteenth Amendments of the United States Constitution right to confrontation, as well as Article 1 § 16 of the Louisiana Constitution of 1974.

"The Sixth Amendment to the United States Constitution, made applicable to the States via the Fourteenth Amendment, Pointer v. Texas, 380 U.S. 400, 403, 85 S.Ct. 1065, 13 L.Ed.3d 923 (1965) provides that '[i]n all criminal prosecutions, the accused shall enjoy the right to be confronted with the witness against him." [30]

In Crawford v. Washington, 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004), the United States Supreme Court said a witness's testimony against a defendant is inadmissible unless the witness appears at trial or, if the witness is unavailable, and the defendant had a prior opportunity for cross-examination. A similar rationale was also reaffirmed in the United States Supreme Court's holding in Melendez-Diaz v. Massachusetts, 129 S.Ct. 2527 (2009), where the court ruled that certificates of analysis admitted at trial over the defense objection were inadmissible because it required the analysis to testify in

person and the admission of the certificates violated the defendant's constitutional right to confront the witness against him.

Mr. Harrison argues that based on Crawford and Melendez-Diaz supra, and the Fifth, Sixth and Fourteenth Amendments of the U.S. Constitution, Sgt. Kaufman's testimony concerning Mr. Guillor who were the only eyewitness to the crime violated Mr. Harrison's right to Confrontation when his counsel elicited the damaging testimony.

The United States Supreme Court has interpreted the right to counsel to mean the right to the effective assistance of counsel. McMann v. Richardson, 386 U.S. 759, 90 S.Ct. 1441, 25 L.Ed. 2d 703 (1970). The right to counsel, which is guaranteed in the Sixth Amendment to the United States Constitution, "is a funda-mental right to criminal defendant's, it measures fairness and thus legitimacy of our adversary process. Kimmelman v. Morrison, 477 U.S. 367, 743, 106 S.Ct. 2574, 2582, 91 L.Ed.2d 305 (1986); citing: Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 92, 9 L.Ed. 799 (1963). Without counsel, right to a fair itself would be meaningless, for it is only through counsel that accused may secure his other rights. Morrison, at 106 S.Ct. 2584, citing Main v. X'd, 474 U.S. 159, 169-170, 106 S.Ct. 477, 483-84, 88 L.Ed.2d 481 (1985); United States v. Cronic, 446 U.S. 648, 104 S.Ct. 2039, 80 L.Ed.2d 657 (1984).

To meet the second prong of Strickland, Mr. Harrison maintains that trial counsel Donnelly deficient performance prejudiced the outcome. In support of this position, had counsel not inquired about Mr. Guillory and his observations of the suspect and officer Gonzales, there's a reasonable probabilit that the outcome of the trial would have been different. Sergeant

Kaufman's testimony concerning Mr. Guillory was very prejudicial to the defense case because the jury was allowed to hear inadmissible testimony which implicated Mr. Harrison as the person seen struggling with Officer Gonzales, prior to the Officer being shot. This testimony in fact places Mr. Harrison at the scene of the crime and as the alleged perpetrator, when in fact no other witness, other than the victims (who's testimony and recollection of the facts is called into question) placed Mr. Harrison at the scene or stated he was the shooter.

It's apparent that counsel Donnelly never realized that Mr. Guillory had not testified, which explains why he did not refrain from inquiring about Mr. Guillory's observations of the suspect and Officer Gonzales. However, defense counsel's failure to recognize obvious prejudice to his client, it does not alleviate him from his duty of ensuring that his client's Constitutional rights are secured. Mr. Harrison avers that the correct procedure should have been for counsel Donnelly to refrain from questioning Sgt. Kaufman concerning Mr. Guillory's observations of the suspect and Officer Gonzales until the prosecution subpoenaed or called Mr. Guillory to testify in person. Surely, it was no benefit to Mr. Harrison to have counsel elicit damaging testimony from an unavailable witness.

What makes matters worst is the fact that the defense was precluded from cross-examining Mr. Guillory about the accounts or events he seen. Mr. Harrison argues that in order to justify allowing a person (a third party) to testify to someone else's findings, the defendant first must have had an opportunity to fully cross-examine that person concerning the matter. In the present case, Mr. Harrison did not enjoy that opportunity because Mr. Guillory was never called to

testify so that he could be cross-examined about what he observed. The admission of hearsay statements and/or testimony, and evidence of guilt of the defendant on trial, absent opportunity by the defendant to cross-examine the declarant, is sufficient to make out a violation of the Sixth Amendment. Citing: Crawford, Supra., and Melendez-Diaz, Supra. The failure to protect a defendant's Constitutional Right renders the attorney's performance deficient. Citing Strickland, Supra.

Just like in Crawford, references of Mr. Guillory's observation of the suspect and the Officer falls within the core class of testimonial statements covered by the Confrontation Clause, and for that reason, Mr. Guillory should have been subpoenaed to testify concerning his observations, or there should have been no references or mentioning of his observations of the suspect and Officer Gonzales before the jury.

Additionally, the jury gave great weight to Sgt. Kaufman's testimony concerning Mr. Guillory's observation and were no longer questioning Officer Gonzales's recollection of the shooting incident in light of this, which ultimately prejudice Mr. Harrison.

## CLAIM #2

Petitioner's Trial Counsel rendered Ineffective Assistance For failure to interview, investigate, or subpoena the only eyewitness to the crime

Mr. Harrison contends that his Constitutional Right to effective assistance of counsel was denied when his trial counsel Donald Dennell failed to locate and interview the only eyewitness to the crime, in violation of the Sixth Amendment to the United States Constitution, and Article 1 § 13 of the Louisiana Constitution of 1974.

Ineffective assistance of counsel claims are analyzed under the well-settled standard set forth in Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). To prevail on a claim of ineffective assistance of counsel there must be a specific showing that counsel made errors so serious that counsel was not functioning as the counsel guaranteed the defendant by the Sixth Amendment. Secondly, counsel's error must be so serious that the defendant was deprived of his right to a fair trial whose result is reliable. It must be shown that but for counsel's unprofessional errors, the result of the proceedings would have been different. Strickland v. Washington, supra.

To meet the First prong Mr. Harrison maintains that trial counsel Donnelly failed to locate and interview the only eyewitness Mr. Guillory concerning his observation of the shooting suspect and Officer Gonzales. The record shows that the knowledge concerning Mr. Guillory and his observation of the shooting suspect and Officer Gonzales became apparent when defense counsel, on cross-examination, elicited testimony from Sgt. Arthur Kaufman which implicated Mr. Harrison as the alleged assailant of the crime. In particular, trial counsel Donnelly elicited the following response from Sgt. Kaufman: "To the best of your knowledge on the scene were any other witnesses shown Mr. Harrison in a show up line up? Yes, sir. [See Trial Tr. pg. 43 (369) line 11-14] Sgt. Kaufman's response was: "Eddie Guillory saw him and pointed him out as the person who was struggling with Officer Gonzales, prior to Officer Gonzales being shot. [See Trial Tr. pg. 43 (369) line 32] and [Trial Tr. pg. 44 (370) lines 1-2].

Mr. Guillory's statement in sum: "I was walking into the Opelousas Market and I seen two guys run out the corner of Verrett to Opelousas and I turned around for a brief second cause I thought it was to people playing." A child is taught during their youth to identify whos an Officer of law. Humanity knows when there's an uniformed Officer in pursuit

of someone this will not be observed as driving. Mr. Guillot have seen a black male and a police officer struggling with each other and afterwards he heard three gunshots and the moss that PD the shooting but running.

See Mr. Guillot's statements. Again these documents should have been obtained and utilized by defense counsel Downall. Mr. Harrison over...

the First prong of Strickland has discussed the claim of inadequate investigation relating to an ineffective assistance of counsel claim.

We have previously recognized that adequate investigation is a requisite of effective assistance. See Rummel v. Estelle, 590 F.2d 103, 104 (5th Cir. 1978) (per curiam).

Ineffectiveness of counsel is clear if the attorney fails to take a plausible line of defense fails to interview available witnesses or fails to call needed experts. These can hardly be considered strategic choices since counsel by his failure has not obtained the facts upon which such a tactical decision could be reasonably made. Gray v. Lucas, Dretke, 398 F.3d 441; Kemp v. Leggett, 1835 F.2d 1435 (5th Cir. 198...); Roampillo v. Beatty, 125 S.Ct. 2456; 161 L.Ed.2d 360 (2005); Wiggins v. Smith, 123 S.Ct. 2527 (2005); Neal v. Cabana, 7... F.2d 1173 (5th Cir. 1985).

To meet the second prong of Strickland, Mr. Harrison maintains that trial counsel's failure to interview the only eye witness to the crime was highly prejudicial to Mr. Harrison and his defense.

The narrative of the shooting incident of which includes the scope of investigation and police report took roots from Mrs. Guillot's statements. No other eye-account of the shooting incident as it occurred

It is to be remembered that the prosecution's case was centered around circumstantial evidence contradictive to Simmons and Pradia's, in fact no other witness, other than the victim (who's testimony and recollection of the...

facts can be called into question placing Mr. Harrison at the scene or stated he was the shooter.

Mr. Harrison was the passenger of the vehicle that was pulled over on Slidell Street by Officer Gonzales and his partner Officer Rebecca Gubert on May 22, 2006, at 3:00 p.m. for illegal tint, a traffic violation. Officer Gubert dealt with Mr. Harrison exclusively during the traffic stop (Trial Tr. Pg. 585 lines 26-31 enclosed).

During the investigation of this traffic violation the corner Mr. Harrison began running and Officer Gubert alerted Officer Gonzales who was unaware of the happenings to give chase (Trial Tr. Pg. 586 lines 9-11 and pg. 583 lines 3-16 enclosed). Officer Gonzales turned from Slidell Street to Verett Street running towards Delousas Street now having a visual from half a block away (Trial Tr. Pg. 588 lines 1-8 enclosed) at who he assumed was the passenger because there were people around" (Trial Tr. Pg. 588 line 21 enclosed).

While the chase was underway preceeding the corner of Delousas Street Mr. Guillory was enroute to the Delousas Market on the corner of Verett and Delousas Street, located from the corner where the West Side Cleaners is located. Also, where a surveillance videotape were recording (See Map). Mr. Guillory's statement in suit, "The Guy who shot the Officer had on a white T-Shirt, football braided hair weighing 180 pounds." This is not to be mistaken Mr. Harrison's description were bound as attired in a black shirt with twists/dreadlocks weighing 240 pounds (See Trial Tr. Pg. 100 lines 8-12 and EXHIBIT ).

Officer Gonzales position was always from behind the assailant and even after coming into contact with a gun pointed at him for a split second because the assailant turned around with a gun pointed Officer Gonzales's force which he then released the Billy Club from his hand, grabbed the assailant's gun and was shot multiple times (Trial Tr. Pg. 100, see GSR #1 and GSR ).

Specialists have proven through studies that "a gun attracts our attention in such a way that the eyes no longer pan. The face at the edge of the focus remains blurred. For this reason victims are often unable to recall such details later on – although the perpetrator may have been standing directly in front of them." (Exhibit 2 enclosed)

Courts have recognized that "centuries of the experience in the administration of criminal justice have shown that convictions based solely on testimony that identifies a defendant previously unknown to the witness is highly suspect", and that, "[o]f all the various kinds of evidence[,] it is the least reliable, especially where unsupported by corroborating evidence. See, e.g., Jackson v. Fogg, 589 F.2d 108, 112 (2nd Cir. 1978); see also United States v. Wade, 388 U.S. 218, 228, 87 S.Ct. 1926, 1933, 18 L.Ed.2d 1149 (1967) ("[T]he annuals of criminal law are rife with instances of mistaken identification. [A]s Mr. Justice Frankfurter once said: 'What is the worth of identification testimony even when uncontradicted? The identification of strangers is proverbially untrustworthy.'"

Scholars and judges alike have commented that the inherent risk of mis-identification is generally exacerbated by the compelling nature of eyewitness testimony: "there is almost nothing more convincing than a live human being who takes the stand, points a finger at the defendant, and says [,] 'That's the One!'" See Elizabeth F. Loftus, Eyewitness Testimony 19 (1979). As Justice Brennan put it, "eyewitness identification evidence has a powerful impact on juries. Juries seem most receptive to, and not inclined to discredit, testimony of a witness who states that he saw the defendant commit the crime." Watkins v. Sowders, 449 U.S. 341, 352, 101 S.Ct. 654, 661, 66 L.Ed.2d 549 (1981) Brennan, J., dissenting).

Furthermore, cross-racial identifications have, in the words of Fifth Circuit, been "demonstrated to be particularly unreliable." Gonzales v. Thaler, 543 F.3d 425, 432 (5th Cir. 2011). Officer Gonzales is of Hispanic heritage, and Mr. Harrison's heritage is of African descent.

## Description Of Assailant In Surveillance Video Recording

Detective Gus Bethea confiscated a surveillance videotape from the Westside Cleaners after witnessing two (2) people running pass the front window of the cleaners in the footage. Det. Bethea stated, "they had a window, which was right next to, just adjacent to 511 Opelousas where the shooting had taken place" (Video Tr. pg. 3 lines 27-30 enclosed). "I observe two glimpses. A glimpse of a black male and a glimpse of a light blue shirt pass by the window" (Video Tr. pg. 4 lines 2-3 enclosed).

The assistant district attorney Mr. Deblanc asked, "you state that you were able to make out a black male and then someone with a blue shirt?" Afterwards, the Court asked, "what shade of blue was the shirt?". Det. Bethea reply was, "a light shade of blue" (Video Tr. pg. 5 lines 10-25 enclosed). The Court then asked, "when did the department change from the traditional light blue shirts to the dark blue shirts, if you remember?" Det. Bethea did not know. The Court said, "well, it was some time after Hurricane Katrina. They went from a traditional blue shirt that the police have worn since the early sixties to the navy blue shirt... do you know when the uniforms officially changed from the powder blue shirt to the dark blue shirt?" Det. Bethea reply was, "I don't know" (Video Tr. pg. 29 lines 7-25).

The Court made an attempt at figuring out who was this person in the light blue shirt, was it Officer Gonzales or someone else.

New Orleans Police Officers, during this time wore uniforms the colour being midnight blue beginning late 2005 thru 2009 due to Hurricane Katrina. "After more than three years... Friday will revert to the agency's traditional powder blue garb" (See www.NOLA.com February, 2009).

This being the case, Officer Gonzales did not have on a traditional light blue shirt on May 22, 2006, his uniform shirt was midnight blue. The fact that this is true shows the clothing description was of importance

(10)

to Mr. Harrison's defense as argued previously.

Had trial counsel Donnelly investigated, or interviewed Mr. Guillory the defense would have provided testimonial evidence in support of Mr. Harrison's argument. The person attired in this light blue shirt was not Officer Gonzales nor was it Mr. Harrison but instead the actual assailant whom Mr. Guillory said was attired in a white T-shirt, by which can be mistaken for light blue when reviewing VHS footage.

Mr. Guillory seen exactly what the surveillance video recording captured. Officer Gonzales was not seen in this footage as he took a wide turn in the street keeping an angle of view of the assailant altogether avoiding the sidewalk where the range of the surveillance video recording had its view (Trial Tr. pg. 599 lines 7-9). Nevertheless capturing Mr. Harrison and the actual assailant, whom Det. Bethea described as wearing a "light blue shirt" and only eyewitness to the crime Mr. Guillory described to Det. DeCynda Barnes as "attired in a white tee shirt" (see Exhibit 3).

After Mr. Harrison was apprehended by New Orleans Police at approximately 3:10 p.m. the police, and other law enforcement agencies were trailing the actual shooter. On the "Incident Recall" thirty (30) minutes after Mr. Harrison was in police custody, police helicopter were "looking for another subject" at "15:48". At "15:49" the "shooter possibly ran into residence, request units". At "15:58" police were to "consider the subject armed and dangerous at this time. Do not fire unless subject comes towards them", and at "16:28" a call went out that "advises TAC and K9 going in have all units stay down and keep cover" (Exhibit A 1-4)

Mr. Harrison argues that this discrepancy is accounted for because law enforcement continued to search for the culprit for approximately one (1) hour and thirty (30) minutes after Mr. Harrison was detained. Mr. Harrison

was a consolation prize.

Therefore, it was imperative that trial counsel Donnelly conduct pre-trial investigations, interviews and obtain the necessary documents to properly defend his client, Mr. Harrison. Even if trial counsel Donnelly were not going to call Mr. Guillory to testify, the fact remains that he should have taken the minimum steps to interview or investigate his story and see if he possessed information that might be favorable to his client. Trial counsel Donnelly had a duty owed to his client to interview supporting, as well as adverse witnesses; Defense counsel need to do more than just rely on the prosecution's assumption concerning a witness's testimony or lack of testimony.

The Fifth Circuit Court of Appeals, applying Strickland, has also spoken on failure to investigate and call corroborating witness. In Nealy v. Cabana, 764 F.3d 1173 (5th Cir. 1985), the defendant had asserted that he had been denied effective assistance of counsel based on the attorney's failure to investigate and call witnesses the defendant identified who could have corroborated defendant's version of the facts. The Court of Appeals reversed, holding that counsel had a duty to interview potential witnesses and make an independent investigation of the facts and circumstances. Id. 764 F.2d at 1180.

The necessity for investigations increase with the "seriousness of the offense and the gravity of the punishment." Bryant v. Scott, 28 F.3d 1411, 1417 (5th Cir. 1994).

In Anderson v. Johnson, 338 F.3d 382 (5th Cir. 2003), the Court found counsel to be ineffective for failing to interview one of only two eyewitnesses to the crime.

Attorney Donnelly should have used this opportunity to test the credibility and reliability of Mr. Guillory's statement, and compare to Officer Gonzales's.

Officer Gonzales testimony differs where he says the assailant had on a black shirt when the shooting occurred and that he were shot while he laid on the ground (Trial Tr. pg 584 lines 12-18). Mr. Guillory's statement was that the shooting happened directly in front of him, on the same side of the sidewalk where he was standing (See Mr. Guillory's statement pg 6 of 8); the assailant was attired in a white T-Shirt, however, he did not see the gun nor did he see the flames discharged from the gun (See Mr. Guillory's statement pg. 3 of 8). There has to be a reason as to why Mr. Guillory did not see the assailant shoot Officer Gonzales while he was on the ground. This is in direct conflict with Officer Gonzales's testimony and could have been used for impeachment purposes in light of no physical evidence Also, Officer Gonzales was on heavy medications during photo Id.

These pertinent specific facts cannot be ignored. The whole of the State's case was a "House of cards". The precise fact was that the only witness to the crime was not at trial, and the jury was deprived of eyewitness testimony. Open and closing arguments would have been extremely different. The attendance of this specific witness alters the outcome. Guillory establishes another alternate narrative contrary to the State's presentation to the jury of the events as they occurred.

This eyewitness offers another explanation that support reasonable doubt and collaborates Petitioner, Mr. Harrison's narrative and facts of the events as they occurred. If this witness's specific facts had been presented to the jury, the jury's decision and full deliberation could not have been the same. Counsel's failure to compel Mr. Guillory as the only witness to the crime to impeach the State's circumstantial evidence presented to the jury and all reviewing courts, is a structural

error and Mr. Guillory's presence for an account of the events as they occurred was warranted.

## PROCEDURAL DEFAULT

A "merits-review of a procedurally barred claim is permitted when the petitioner is able to demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law." Segundo v. Davis, 831 F.3d at 350, 345 (5th Cir. 2016) (citation and internal quotation marks omitted).

Under Trevino v. Thaler, – U.S. –, 133 S.Ct. 1911, 185 L.Ed.2d 1044 (2013), applying Martinez v. Ryan, – U.S. –, 132 S.Ct. 1309, 182 L.Ed.2d 272 (2012) the Supreme Court established that "[i]nadequate assistance of counsel at initial-review collateral proceedings may establish cause for a prisoner's procedural default of a claim of ineffective assistance at trial." Martinez, 566 U.S. at 9, 132 S.Ct. 1309 (so holding for jurisdictions where ineffective assistance of trial counsel claims cannot be brought on direct appeal); see Trevino, 569 U.S. at 428, 133 S.Ct. 1911 (extending Martinez to jurisdictions that "do not offer most defendants a meaningful opportunity to present a claim on ineffective assistance of trial counsel on direct appeal," even if they do not expressly prohibit it). However, "to succeed in establishing cause, the petitioner must show (1) that his claim of ineffective assistance of counsel at trial is substantial-i.e., has some merit" and (2) that habeas counsel was ineffective in failing to present those claims in his first state habeas proceeding." Garza v. Stephens, 738 F.3d 669, 676 (5th Cir. 2013) (citing Martinez, 132 S.Ct. at 1318.

On May 15, 2014, the State filed a stay motion pending the results to disqualify Mr. Harrison's second post conviction

counsel Cate Bartholomew for failing to follow the rules of professional conduct. The Court granted the Stay. On June 23, 2021, Mr. Harrison's fourth post-conviction attorney Justin Harrell enrolled as counsel and filed a supplemental brief, however, not for ineffective assistance of counsel for failure to investigate, interview, or subpoena only eyewitness to the crime Eddie Guillory. In 2022, the State District Court denied Mr. Harrison's seven (7) post-conviction claims without re-opening the case from the pending stay.

Counsel Harrell appealed the District Court's ruling to the State's Fourth Circuit Court of Appeal, however, did not keep claim #2 noted above during this filing. The Fourth Circuit Court of Appeal denied writ. Counsel Harrell was then re-hired for forward filing to the Louisiana Supreme Court. Unfortunately, counsel did not correct this error ultimately failing his client as being an effective counsel by which is guaranteed to Mr. Harrison as made applicable through the Sixth Amendment to the United States Constitutions.

Petitioner Mr. Harrison has shown cause for the default. Furthermore Mr. Harrison has shown actual prejudice as a result by which has already been argued above.

## CLAIM #3

Petitioner was denied effective assistance of counsel Under the Fifth, Sixth, Eight, and Fourteenth Amendments to the United States Constitution and Equivalent Provisions of the Louisiana Constitution at his Habitual Offender Proceeding

The United States Constitution and the Louisiana Constitution afford criminal defendants the right to effective assistance of counsel at sentencing. See U.S. Constitution, Sixth Amendment; also La. Constitution Art. 1 § 13.

A defendant is entitled to effective assistance of counsel during both, the guilt and sentencing phases. This principle is sacrosanct and is firmly ensconced in our federal and state Constitution, see U.S. Constitution Amendments Sixth and Fourteenth; ("at each stage of the proceedings, every person is entitled to assistance of counsel of his choice, or appointed by the Court if he is indigent and charged with an offense punishable by imprisonment.")

Mr. Harrison is entitled to relief if he can show that: (1) the performance of his sentencing counsel fell below the objective standard of reasonableness, and (2) the deficiency of sentencing counsel's performance prejudiced the defendant. See Strickland v. Washington, 466 U.S. 668, 687 (1984). Counsel's deficient performance prejudices the defendant if the errors "deprive the defendant of a fair trial." Strickland, 466 U.S. at 692.

To carry this burden, the defendant must "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine the confidence in the outcome." Id. at 694.

Counsel's duties extend beyond presentation at trial. Mr. Harrison is entitled to competent counsel during all aspects of his criminal prosecution. Powell v. Alabama, 287 U.S. 45, 68-69, 53 S.Ct. 55, 77 L.Ed. 158 (1932)

A defendant's right to competent and effective representation has been extended to multiple offender proceedings and other penalty enhancement adjudications. Chewning v. Cunningham, 368

U.S. 443, 82 S.Ct. 498, 7 L.Ed.2d 442 (1962). (A defendant has a constitutional right to the assistance of counsel at a habitual offender proceeding.)

In addition, a claim of ineffective assistance of counsel at sentencing is cognizable in post conviction proceedings. "Sentencing is a critical stage of the proceedings, at which there is a right to effective assistance of counsel and direct review is ill suited to address such a constitutional violation because it will often require further evidentiary development." State v. Harris, No. 2018-KH-1013, 1016 (La. July 9, 2020).

Finally, the court must contemplate "whether the result of the proceedings was fundamentally unfair and unreliable." Lockhart v. Fretwell, 506 U.S. 364, 369 (1993).

The United States Supreme Court has recognized that criminal defendants are entitled to expect that their counsel understands applicable constitutional law. See e.g. Cone v. Thompson, — U.S. —, 131 S.Ct. 1350, 1362-63, 179 L.Ed.2d 417 (2011). It follows that failure to pursue meritorious claims and defenses, owing not to strategic considerations but to a misapprehension of controlling law or relevant facts generally, will be found deficient. See e.g., Kimmelman v. Morrison, 477 U.S. 365, 382, 106 S.Ct. 2574, 91 L.Ed.2d 305 (1986); Nero v. Blackburn, 597 F.2d 991, 993-94 (5th Cir. 1974).

At the time of Mr. Harrison's conviction, Louisiana habitual offender law gave its requirements that is to be followed when opposing the Multiple Bill. See L.A. R.S. 15:529.1 D.(1) (2008)

A guilty plea cannot be used to enhance a sentence if the transcript of that guilty plea proceedings show that the defendant was not given the information required by Boykin. See State ex rel. Bishop v. Blackburn, 384 So.2d 406, 408 (La. 1980) (Dixon, J. concurring).

[17]

At the time of Mr. Harrison's habitual offender proceedings Louisiana Code of Criminal Procedure Art. 532 (2) also permitted a defendant to file a motion to quash an indictment that "fails to conform to the requirements of Chapter 1 and 2 of Title 13."

A guilty plea is constitutionally defective if a defendant fails to waive his right against self-incrimination, his right to a jury trial, and his right to confront his accusers (Boykin Rights). See generally Boykin v. Alabama, 395 U.S. 238, 243 (1969). It is well settled law that a guilty plea is only constitutionally valid if the record demonstrates a knowing and voluntary waiver of the constitutional rights that are being waived, particularly the right to trial by jury, the right to confront accusers and the privilege against self-incrimination. See Boykin, 395 U.S. at 243; also La. C.Cr.P. Art. 556.1.

Mr. Harrison's sentencing counsel, Donald Donnelly, rendered ineffective assistance at his Multiple Bill hearing. (See Sentencing Tr.)

Trial was concluded on March 13, 2008. "On March 17, 2008, the district attorney's office filed a multiple bill of information charging Eddie Harrison with being a double offender." (See Sentencing Tr. pg. 673 lines 4-7). The multiple bill sentencing hearing was held two (2) days later. Counsel Donnelly did not file particular objections to the information, neither did counsel investigate the constitutionality of the underlying predicate offense of case No. 98-6230 from Jefferson Parish which the State used to enhance Mr. Harrison's sentence. (See Sentencing Tr. pg. 673 line). Additionally, counsel Donnelly did not file a Motion to Quash the State's Multiple Offender Bill of Information.

Sentencing counsel's failure to investigate and challenge the State's use of case No. 98-6230 to enhance Mr. Harrison's sentence was objectively unreasonable.

Counsel should have moved to quash the bill of information and/or objected to the State's use of his guilty plea because the

State obtained this conviction in violation of Mr. Harrison's state and federal constitutional rights- as his guilty plea was not taken in compliance with Boykin.

A review of the Boykin transcript from case No. 98-6230 demonstrates Mr. Harrison did not "individually articulate [] waiver of each of the three Boykin rights." State v. Parker, 285 So. 3d 1041, (La. 10/22/19).

Petitioner, Mr. Harrison, whom were a juvenile offender during the predicate offense were represented by counsel Sonny Armond at the guilty plea hearing of May 10, 1999.

Counsel Armond filled in every answer throughout this form in writing, that to which is incomparable with this juvenile's handwriting from observance of his signature. (See Waiver of Constitutional Rights and Plea of Guilty form enclosed).

Counsel Armond apprised the court according to which a waiver of Const. rights and plea of guilty form were being presented to the court; nevertheless, this same form is also descriptive of, "TO THE DEFENDANT BY THE JUDGE, PERSON TO PERSON." There is not a law that allows counsel to pose as the judge and present a waiver of Const. rights form to a juvenile offender and fill in every question on this form. This person to person, by the trial judge to the defendant proved nonexistent during the point in time of signing. This is not proper nor is it legal for counsel Armond to operate in such a manner, even if he were posing as Mr. Harrison's legal guardian. (See Boykin Tr.)

Counsel did nothing to challenge the use of this conviction. He failed to investigate the facts underlying the predicate offenses and failed to file appropriate motions or make the appropriate objections. He also failed to challenge the issue at the multiple offender sentencing hearing.

Had counsel Donnelly properly investigated the state's claim that Mr. Harrison was a second-time felony offender, counsel Donnelly

would have been able to attack the State's habitual offender bill of information.

The State cannot use a prior felony conviction to enhance a criminal sentence if that prior guilty plea was not taken in compliance with Boykin.

During Mr. Harrison's prior offense hearing Judge Alan G. Green questioning in sum: "You have a right to trial by jury. The jury could find you guilty or not guilty. You have a right to hire an attorney, or have one appointed by the State. By pleading guilty you are giving up these rights, do you understand?" However, Mr. Harrison was not made aware of his right to remain silent at trial; neither did the Court advise him that the State ultimately has to prove that the elements of armed robbery existed.

The Right Against Self-Incrimination is guaranteed through the Fifth Amendment and made applicable through the Due Process Clause of the Fourteenth Amendment to the U.S. Constitutions.

Mr. Harrison was not informed of his right to stand trial without being forced to testify against himself and therefore, the record does not evidence a knowing and voluntary waiver of this juvenile's right.

Juvenile counsel Asmond told the Court, "I (he) would waive a formal reading of the Bill of Information" without Mr. Harrison having an understanding of the true nature of the charge. A plea is involuntary if the defendant did not receive "real notice of the true nature of the charge against him." Smith v. O'Grady, 312 U.S. 329, 334, 61 S.Ct. 572, 85 L.Ed. 859 (1941).

Mr. Harrison was arraigned on the same day of the guilty plea hearing, however, as the record reflects counsel waived the reading of the Bill of Information. (See Boykinization Tr. pg. 1)

Additionally, the language within the minute entry form states:

The Court advised the Defendant of his/her rights. The right

(20)

to a trial by judge/jury. The right to confront his/her accusers The Defendant waived these rights and a waiver of rights form was executed and filed into the record.

This is contradictive of what's been argued already. Mr. Harrison's juvenile counsel addressed the Court with this waiver of rights form at the start of the hearing, contrary to the closing of it as documented by Shelisa D. Gilbert, Deputy Clerk. (See Minute Entry Form and Boykin Tr.).

A guilty plea is constitutionally infirm if it is not entered freely and voluntarily, if the Boykin **7 colloquy is inadequate, or when a defendant is induced to enter the plea by a plea bargain or what he justifiably believes was a plea bargain and that bargain is not kept. Tr.

Judge Green asked two (2) questions and one (1) answer was given by Mr. Harrison. Judge Green: "Do you understand that the plea of guilty is your decision and that no one can force you to plead? It is a voluntary act and it must be free from any vices or defects which would render your ability to plead guilty inadequate. Has anyone used any force, intimidation, coercion or promises or rewards to either you or any members of your family in order to make you plead guilty?"

Mr. Harrison's response was "No, sir." (Boykin Tr. pg. 3 lines 27-32). This is a loaded question by which is inferred that this juvenile offender did not understand that it was his decision alone, but his counsel Armond, an authority figure for it is obvious when considering the waiver of Const. Rights and plea of guilty form and minute entry form, collectively.

Mr. Harrison would have declined to adhere to the plea deal and would have elected for a jury trial, preserving his Const. Rights.

In Miller v. Alabama, 567 U.S. 460, 132 S.Ct. 2455, 183 L.Ed.2d 407, (6/25/12), the Supreme Court spoke in great

length of a child's "lack of maturity and an underdeveloped sense of responsibility" and "are more vulnerable... to negative influences and outside pressures" and overall, "cannot be view simply as miniature adults."

Mr. Harrison's prior offense is case No. 98-6230 did not comply with Boykin as there is clearly no articulated waiver of his three Boykin Rights (See Boykin Tr.). The transcript attached herein is exactly the type of evidence that shows "an infringement of [constitutional] rights or a procedural irregularity." The failure to present such evidence is demonstrative of Mr. Donnelly's failure to properly investigate and prepare for Mr. Harrison's sentencing hearing. This is a quintessential example of ineffective assistance of counsel.

Had this evidence been presented, the outcome of Mr. Harrison's sentencing proceeding in this case would have been different because he would not have been adjudicated as a second-time felony offender.

The prejudice to Mr. Harrison is clear. There is more than just a "reasonable probability" that the outcome of the proceedings in this case would have been different, it's a near certainty. Strickland, 466 U.S. at 692.

Strickland counsels that the court must "consider all the circumstances" when weighing an ineffective assistance claim. The errors in Mr. Harrison's prior juvenile guilty plea should not have been used at the Multiple Bill hearing.

The law was clear when Mr. Harrison's counsel represented him, but he ignored it and failed to investigate the facts alleged by the State. His conduct was objectively unreasonable and that Mr. Harrison, who is to be imprisoned for a century (100 years), has been prejudiced cannot be denied.

PROCEDURAL DEFAULT

A "merits" review of a procedurally barred claim is permitted when the petitioner is able to demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law". Segundo v. Davis, 831 F.3d at 350, 345 (5th Cir. 2016) (citation and internal quotation marks omitted).

Under Trevino v. Thaler, ─ U.S. ─, 133, S.Ct. 1911, 185 L.Ed.2d 1044 (2013), applying Martinez v. Ryan, ─ U.S. ─ 132 S.Ct. 1309, 182 L.Ed.2d 272 (2012) the Supreme Court established that "[I]nadequate assistance of counsel at initial review collateral proceedings may establish cause for a prisoner's procedural default of a claim of ineffective assistance at trial." Martinez, 566 U.S. at 9, 132 S.Ct. 1309. (So holding for jurisdictions where ineffective assistance of trial counsel claims cannot be brought on direct appeal); See Trevino, 569 U.S. at 428, 133 S.Ct. 1911 (extending Martinez to jurisdictions that "do not offer most defendants a meaningful opportunity to present a claim on ineffective assistance of trial counsel on direct appeal," even if they do not expressly prohibit it). However, "to succeed in establishing cause, the petitioner must show (1) that his claim of ineffective assistance of counsel at trial is substantial — i.e., has some merit" and (2) that habeas counsel was ineffective in failing to present those claims in his first state habeas proceedings." Garza v. Stephens, 738 F.3d 669, 676 (5th Cir. 2013) (citing Martinez, 132 S.Ct. at 1318.

On June 23, 2021, Mr. Harrison's fourth post-conviction counsel Justin Harrell enrolled as counsel and filed a supplemental brief of ineffective assistance of counsel during sentencing, however, failed to raise the claim of ineffective assistance of counsel at sentencing for failure to investigate, and object to the State's use of Mr. Harrison's prior conviction. As argued and proven through the Docket Master (see OPCSO Docket Master) the State

filed a motion to Stay Mr. Harrison's post-conviction pending disqualification of Mr. Harrison's second post-conviction counsel Cate Bartholomew for not following the rules of professional conduct. This was done and granted by the court on May 15, 2014.

Counsel Harrell had enough time to review Mr. Harrison's sentencing issues, and see the constitutional violations within Mr. Harrison's prior conviction. Had counsel done so Mr. Harrison would not have been faced with a procedural bar.

Petitioner, Mr. Harrison has shown cause for the default. Furthermore, Mr. Harrison has shown actual prejudice as a result by which has been argued above.

No further rendition is necessary.